Dissenting Opinion.
Watkins, J.
The testamentary executrix obtained a probate order in the mortuoria for the sale of the property of the succession *125 of the deceased, movable and immovable, to pay debts — the immovables to be sold for part cash and part on time.
The bank, as a special mortgage creditor for the sum of $15,000' on a portion of the realty included in the terms of the order, seeks, to have it vacated so that it may at once proceed via exeeutiva against the mortgaged property, and have it sold under an order of sale, which it has already obtained, though subsequently to the granting of the probate order assailed.
The grounds set out by the bank are, viz:
1. The prematurity of the executrix’ application for the probate order.
2. If executed it would divest it of material rights, to its prejudice.
The first ground is clearly untenable, because if fault there was on the part of the executrix in hurriedly making an application for an order of sale, before the completion of the inventories, and within thirty days after confirmation, it was condoned by the like haste of the mortgage creditor, in obtaining an order of seizure and sale afterward.
But, it is submitted, that the delay of thirty days which must elapse after the appointment of a curator, before an order is granted for the sale of immovables of a succession, is for the sole purpose of such curator being able to obtain adequate information “concerning the debts of the succession,” and to determine “ if it be necessary to sell the (immovables) to pay the debts.” R. C. O. 1164.
The only restraint that the law imposes upon the curator is that he “is bound to wait thirty days.” Why is he bound to wait? “In order that he may know * * if it is necessary to sell the immovables, in order to pay debts.” Then, it is merely in aid of the curator’s acquisition of that knowledge that he is required to wait.
If, then, he can obtain the requisite information before the expiration of that delay, there ceases to be a necessity for Mm to longer wait. Such is the case under consideration. Within the thirty days delay, the executrix ascertained the amount and character of the debts of the deceased, and filed a tabular statement of them, on the faith of which she claimed the order of sale. There was no necessity for additional delay.
It is further submitted that this rule does not apply to an order'of §ale of succession property granted on the application of an execu *126 trix, because the Oode provides that “in default of funds sufficient to discharge the debts and legacies of sums of money, the testamentary executor shall cause himself to be authorized by the court to sell the movables, and if they are insufficient, the immovables, to a sufficient amount, to satisfy those debts and legacies.” R. O. O. 1668.
There is no delay fixed in respect to an executor.
On the other ground in my opinion there is no just cause for the revocation of the probate order of sale.
The opinion of the court says that, under the act of mortgage, “the bank had the right to have the property sold without appraisement * * and for cash.”
It follows that the executrix had not the right to have the property sold partly on terms of credit.
But it does not follow that she had no right to have it sold under her order at all. To my mind it is clear that all the bank can require is to have the terms of sale so modified as to conform to the terms of the mortgage. A mortgage is but a security for the payment of a debt — a jus ad rem, and not a jus in re. Wisdom vs. Buckner, 31 An. 57.
The debtor is entitled to absolve himself from the mortgage by paying the debt secured. His executrix has the same right, or to discharge it, as speedily as possible by sale of the mortgaged property.
In case the debtor or his executrix are guilty of delay or laches of any kind in discharging the debt or in making a sale, the right of the creditor to institute legal proceedings springs into existence, and he may procure an order for the seizure and sale of the property specially mortgaged; but' I am not aware of any penalty the law attaches to the exercise of undue haste on the part of either in discharging a debt or in effecting a sale in the effort to discharge it.
I was not apprised of the existence of any doubt of the legal right of a succession representative to procure an order for the sale of all the property of a succession for the purpose of paying acknowledged debts without first procuring the consent of mortgage creditors or giving them prior notice of his intention to apply for an order of sale.
Indeed, the Oode declares that, “if the amount of debts known is such that it is necessary to sell the whole, or a part of the immovable property which belongs to a succession, the curator shall present his petition to the judge who has appointed him to obtain an order *127 for the sale of this property, or of such a part as may be necessary to pay the debts of the succession.” R. O. O. 1165.
The law does. not provide that any notice of an anticipated sale shall be given to mortgage creditors, but it merely provides that “ if the succession be insolvent the curator is bound to apply for an order for a meeting of creditors.” This meeting has for its sole object “ to deliberate on the mpst advantageous manner of selling the effects of the succession.” R. O. C. 1172.
It has no power to control the granting an order of sale at all. To this meeting all creditors, privileged and ordinary, are summoned alike.
The Code provides:
“ If, at the meeting of the creditors thus assembled, the creditors by privilege or mortgage require that the sale of the effects be made for cash, this wish in this respect shall prevail over that of the other creditors.” R. C. C. 1175.
On homologating these proceedings the judge “is bound to order to lie sold for cash so much of the property of the succession as will be sufficient to pay the creditors by privilege or mortgage * * if they require the sale to be thus made.” R. C. C. 1177.
French, Executor, vs. Prieur, Recorder, 6 R. 299, is not authority to the contrary. In that case a rule was taken to have the recorder to have certain mortgage inscriptions canceled, on the ground that certain succession property had been disposed of at public sale, by the register of wills, and that the effect of such sale was to transfer the lien of the creditor to the proceeds and pass the title free of in- ' cumbrances. This the court declined to do, and expressed the opinion that “mortgage creditors have, bylaw, certain rights secured to them in relation to the sale of property belonging to a succession; and it would seem but just that they should have some notice of an application to sell that on which their lien exists, and thereby discharge it.”
Under this state of facts the court seemed to think that a sale of mortgaged property, in a succession, by a register of wills, without notice to the mortgagors, was irregular; but it does not follow that had the sale been made, under an order of court, to pay debts, at the petition of a succession representative, the court would have so held.
*128 Quite the contrary is true; for the court observes, in the same connection, that:
“There can not now be a doubt that a sale of the property composing a succession, legally and regularly made under a judgment of the court of probates, discharges the mortgages on it which may have been given by the deceased. The purchasers take it free, and the court of probate has the power to release them all.”
The record shows that the total debts of the deceased are $63,480, and the appraisement of all properties on the inventory aggregates' $111,827.06 — the value being nearly double the amount of debts. The estate is prima facie solvent, and there was no occasion for the convocation of a meeting of creditors.
The conclusion to my mind is irresistible that the bank has no right that has been impaired by the probate order, except in respect to the terms of sale contained in the act of mortgage. It has no right in law to demand the revocation of the probate order of sale, more especially when it has already procured a subsequent order for the seizure and sale of the mortgaged property. Of course there is no question of its right to thus proceed, if the executrix had riot obtained a prior probate order of sale.
The judge of the proper jurisdiction had the power to grant-cm order of sale. When he granted the probate order of sale, on the application of the executrix, and within the viortuaria, his power to grant an order of seizure and sale was exhausted.
By the former order the property was placed in custodia legis, and consecrated to the mass of creditors of the succession, subject alone to a change, or modification of the terms of sale, so as to conform to the acts of mortgage of any or all the mortgage creditors.
The identical question litigated here was squarely decided in Poutz vs. Bistes, 15 An. 606. The plaintiff had procured an order of seizure of certain mortgaged property subsequent in date to a probate order of sale granted in the viortuaria embracing the same property. The ■ court said:
“The plaintiff, after the Second District Court had issued its order of sale, ought to have applied to that court for a modification of the terms of sale, if he was not satisfied with the same. Any other rule would produce unnecessary embarrassment.”
Under similar circumstances this court, in Morere vs. Preston, 34 An. 873, maintained a probate order of sale in the succession of *129 Porter, and reversed a judgment sustaining an injunction of a mortgage creditor, who had begun executory proceedings against certain mortgaged property in the succession, four years before, and the-only defect in which was the want of notice to the proper parties.
The court said:
“ The consequence is, that as to the creditors of C. O. Porter,, represented by the administrator of his succession, the property ordered to be sold was not in custodia legis, and that the probate court, having acquired jurisdiction over it before any seizure had been effected, the order of sale was improperly rendered. 15 An-636, Poutz vs. Bistes.”
Walmsley vs. Levy, 36 An. 226, is to the same effect.
Under quite similar circumstances, our predecessors said, in Tertrou vs. Comeau, 28 An. 633, of an injunction that was sued out by a mortgage creditor for the purpose of restraining a sale of succession property, on the identical grounds laid in opponent’s rule:
“It was the duty of the administrator to have the property sold, if the estate was in debt, and that fact is shown by plaintiff, who claims-to be a creditor in a sum exceeding |16,000.
“The order of sale was necessarily ex parte, and we can see no injury which can befall the plaintiff by the sale of the property. Indeed, we do not see how else he could be paid.”
In the case of Wells vs. Wells, 25 An. 194, an additional and stronger reason is assigned by the court why the probate order should be maintained. They say:
“ It is sufficient to say that a mortgage creditor has no right to enjoin a sale for want of notice of the application therefor, when the sale was ordered to pay creditors having a higher rank, or a preference-over the mortgage creditor. In this succession it has been decided that the debts for the services of attorneys and the commissions of the executor should be paid by preference over the deceased.” To the same effect are Succession of Whitehorn, 3 An. 396; Succession of Lauer, 18 An. 721; Succession of Patrick, 24 An. 154; Succession: of Tobor, 33 An. 343.
In this succession there appears one debt in addition to. such as are enumerated in the opinion cited, of over ?4,000 for taxes, which certainly prime the mortgage of the bank pro tanto. Such privileges extend to movables and immovables alike, and which, for want off sufficient movable property, must be paid from the proceedsmff the. *130 'immovables, and by preference over mortgages. R. O. C. 3,252 3353, 3366, 3369.
This must be done in the mortuaria, on a tableau of distribution, and on a judgment of court. R. C. O. 1181. How can that be done if the executrix has not the possession of the funds for distribution?
The rights of the bank will be perfectly protected by requiring the executrix to furnish security, and if there be a likelihood of the property being sold at a sacrifice, it can buy on its own account, and hold the proceeds on furnishing proper security to the succession.
The opinion lays stress on the fact that the bank’s mortgage contains the pact de non alienando. Its effect is solely to prevent the mortgagor from making a conventional sale of the mortgaged property, to the prejudice of the mortgagee’s rights. In this case, no .such sale has been made, and the existence of the pact does not affect ■this case in the least.
There is, in my opinion, no question of diligence or laches in the case. If there was, the fault is certainly with the bank, because its mortgage was executed and the notes of deceased delivered on the 13th of August, 1885, and they became due at twelve months after •date. Hence, when, on the 20th of August, 1889, the probate order of sale was gxanted on the petition of the executrix, they were three years past due, and at any date within that period of time the bank could have procured an order of seizure and sale, had it chosen to do so, but did not.
This court held in Chaffe vs. Parmer, 34 An. 1017, that it was “ an administrator’s duty to obtain the highest price for the property.”
What was the executrix to do, standing as she was in the presence of five special mortgages on five different pieces of real estate of the' succession of the deceased, and aggregating $56,000 in amount?
Should she have waited longer for action by the various mortgagees, •or provoked them to commence five separate executory proceedings against the five mortgaged properties?
Had she done so, it is perfectly manifest that the added burdens of accumulated costs, commissions, attorneys’ fees, advertisements, etc., would have resulted in a ruinous sacrifice of property and pressed the succession to the verge of iñsolvency.
Had she thus waited or proceeded, in my opinion the executrix would have violated her plain legal duty. She is bound, under her •oath to protect the rights of all, whether privileged or ordinary cred *131 itors, alike, and endeavor to save something for the heirs. If a different rule obtain and the rule of opponents made absolute, property specially mortgaged will be liberated from administration entirely by succession representatives.
It is with respect I submit that the opinion of the court vacating a probate order of sale of succession property, to make way for an order of seizure and sale in behalf of a mortgage creditor, is a departure from the settled jurisprudence of more than a quarter of a century, and will greatly embarrass the administration of successions in the country parishes. The conservative and salutary rule of stare decisis ought to control. For it has been wisely said: “In order to ■secure certainty and stability in the administration of law, it is a rule of jurisprudence that when a particular construction of a statute has been for a long time acquiesced in, not only by those whose personal and property rights are affected, but by those whose duty it is to execute it, the courts will recognize it as the true construction and enforce it accordingly. ’ ’
To this effect are various authorities: Hawkins & Roberts vs. Bur, 37 An. 55; State vs. Thompson, 10 An. 122; Levy vs. Hetche, 40 An. 500; Ohio Life Insurance Co. vs. Debott, 16 How. 431; Douglass vs. County of Pike, 101 U. S. 677.
For these reasons I deem it my duty to dissent.